UNITED STATES of America,
Plaintiff–Appellee,

v.

Arthur B. MAEZ, Defendant–Appellant.

No. 89–2276.

United States Court of Appeals,
Tenth Circuit.

Oct. 15, 1990.

Ann Steinmetz, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Robert J. Baca, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him, on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN and EBEL, Circuit Judges, and BROWN *, District Judge.

LOGAN, Circuit Judge.

Arthur Maez, who has pleaded guilty to aiding and abetting bank larceny in violation of 18 U.S.C. § 2113(b) and 18 U.S.C. § 2, appeals the district court's denial of his motion for the return of money seized by the FBI and given to the robbed bank. We affirm the district court's determination that the Western Bank was entitled to the money.

In the evening following the two-man robbery of a Western Bank branch, FBI agents and Albuquerque police officers arrested Maez and searched his home. Eyewitnesses to the robbery had identified the license tag number and description of a truck that corresponded to one owned by Maez. In the master bedroom closet, an agent found a duffle bag containing $5,844 in cash, mostly small bills, "wadded up in a bunch of little different wads." V R. 150.

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

Approximately $12,900 had been stolen from the Western Bank branch, of which four twenty-dollar bills were bait money. The agents did not find any of the bait bills, bank bags, or bank wrappers in the Maez home. Maez claimed that he had earned the seized money by collecting aluminum cans and doing odd jobs and that he usually kept his money in cash at his home.

Maez was convicted at a trial in which the bank teller identified Maez as one of the robbers and two other eyewitnesses identified his truck as the one used by the robbers. This court reversed the conviction, holding that the district court should have suppressed Maez' statements and the items seized from his home as the fruits of an illegal arrest. *United States v. Maez*, 872 F.2d 1444 (10th Cir.1989).

On remand, Maez entered an *Alford* plea to aiding and abetting the larceny of the Western Bank branch. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). After sentencing, the district court entered a show cause order as to why the money seized from Maez' closet should not be returned to the bank. In response, Maez filed a motion pursuant to Fed.R.Crim.P. 41(e) for the return of the money to him. The district court denied the motion, ruling that the bank is entitled to the money.

■ Proceedings surrounding the motion for return of property seized in a criminal case are civil in nature, but the interests of judicial efficiency permit a criminal trial judge to rule on the motion. *United States v. Wright*, 610 F.2d 930, 934–35 (D.C.Cir.1979); *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir.1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978). The judge is not bound by the criminal proceeding's standard of proof or its findings. *LaFatch*, 565 F.2d at 84–85; *see also State v. Poxon*, 514 N.E.2d 652, 653 (Ind.App.1987).

■ We have previously held that " '[t]he seizure of property *from someone* is *prima facie* evidence of that person's entitlement, particularly when the seized property is money . . . .' " *United States v. Estep*, 760 F.2d 1060, 1064 (10th Cir.1985),

quoting *Wright*, 610 F.2d at 939 (emphasis in original). An adverse claimant may rebut by either proving ownership by positive identification or proving that the claimant in possession holds the money unlawfully. *Estep*, 760 F.2d at 1064. The standard of proof is a preponderance of the evidence. *Id.* at 1065.

Thus, a defendant may be acquitted of the crime under the reasonable doubt standard but found to possess property unlawfully because of the lower preponderance standard of proof. *Id.* at 1064–65. We will uphold the district court's determination of ownership, unless clearly erroneous.

■ Maez complains that the Western Bank did not itself contest his ownership. The government did, however, and we have no problem in finding that the government has sufficient interest in returning property in its possession to the true owner to sustain its participation in the proceedings, asserting the bank's ownership.

■ Maez' pre-seizure possession of the money establishes a prima facie case that he is entitled to it. Here, the government cannot prove the bank's ownership by positive identification (i.e., the bait bills); but it offered considerable circumstantial evidence that Maez obtained the money unlawfully.

First, Maez entered an *Alford* plea. Under *Alford*, a defendant may enter a plea of guilty to a charged offense, although he does not admit that he committed the charged offense. *Alford*, 400 U.S. at 37–39, 91 S.Ct. at 167–68. However, for such a plea to be valid, it must be based on the defendant's intelligent conclusion that "the record before the judge contains strong evidence of actual guilt." *Id.* at 37, 91 S.Ct. at 167. Thus, Maez himself recognizes the evidence of his participation in the bank robbery. Second, eyewitnesses have identified Maez as one of the robbers and his truck as the getaway vehicle. Third, a substantial amount of cash was found in the Maez bedroom closet, slightly less than half of the total amount stolen by two men.

We are not convinced by Maez' argument that, because banks do not keep their money in little wads, the money seized from his house could not be from Western Bank. If the two robbers divided the money after the robbery, they could have wadded it while stuffing it into their own bags. Neither does Maez' explanation of how he came to have $5,844 in cash in his closet seem credible. Maez presented no evidence at the hearing on the source of this money; instead, he relied on the presumption from his possession and his offer of proof at his trial that he had worked collecting aluminum cans and doing odd jobs for which he was paid in cash. Maez also offered no evidence that his wife had been saving her income in cash in their closet.

The district court found, by a preponderance of the evidence, that Maez' possession of the money was unlawful and that the bank was entitled to it. The finding is not clearly erroneous.

AFFIRMED.